# United States District Court
# District of Massachusetts

LINDA ROESCHLAUB,
    Plaintiff,

v.                         CIVIL ACTION NO. 2011-10459-JLT

MICHAEL J. ASTRUE,
    Commissioner,
     Social Security Administration,
        Defendant.

## *REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO REVERSE (#16) AND DEFENDANT'S MOTION TO AFFIRM THE COMMISSIONER'S DECISION (#17)*

COLLINGS, U.S.M.J.

### *I. Introduction*

On March 17, 2011, plaintiff Linda Roeschlaub ("Roeschlaub") filed a complaint (#1) pursuant to 42 U.S.C. § 405(g) against defendant Michael J. Astrue, Commissioner of the Social Security Administration ("the

Commissioner"), appealing the denial of her claim for Social Security Disability Income ("SSDI") and Supplemental Security Income ("SSI") benefits. On June 13, 2011, the Commissioner filed an answer to the complaint (#12) and the administrative record. (#13) The parties have submitted cross-motions to resolve the plaintiff's claims, respectively seeking an order to reverse the Commissioner's decision (#16) and an order to affirm the Commissioner's decision. (#17) The motions have been fully briefed (##16, 18) and stand ready for decision.

## II. Procedural Background

On January 21, 2009, Roeschlaub filed for SSDI and SSI benefits alleging a disability onset date of December 31, 2005. (TR[1] at 7) Her applications for both were denied initially on May 20, 2009 (TR at 68-73) and on reconsideration on November 17, 2009. (TR at 77-82) Roeschlaub requested a hearing before an administrative law judge ("ALJ"). (TR at 84) That hearing was held on November 1, 2010, with the plaintiff, her attorney and a vocational expert in attendance. (TR at 20-63)

On November 16, 2010, the ALJ issued a decision wherein she found as

---

[1] The abbreviation "TR" refers to the administrative record (#12).

follows: Roeschlaub met the insured status requirements through December 31, 2010; Roeschlaub has not engaged in substantial employment since December 31, 2005; Roeschlaub has the following severe impairments – lumbar and cervical disc disease and right shoulder bursitis; Roeschlaub's impairment from a left hemispheric stroke does not reach "severe"; Roeschlaub does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; Roeschlaub has the residual functional capacity to perform sedentary work except that she could only perform simple, 1-2 step tasks, could not push or pull greater than 15 pounds with her upper extremities, and must be afforded the option to alternate between sitting and standing; Roeschlaub is unable to perform any past relevant work; considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Roeschlaub can perform; and Roeschlaub has not been under a disability from December 31, 2005. (TR at 4-14)  With the Disability Review Board having failed to complete its review within ninety days of the ALJ's decision, that decision became the final decision of the Commissioner. (TR at 1-3)

### III. The Evidence

Roeschlaub, age thirty-nine at the time of the ALJ's decision, completed the twelfth grade. (TR at 25) She has past work experience as a home health aide. (TR at 39) Roeschlaub alleges that she has been disabled since December 31, 2005, due to herniated discs, deteriorating discs, a stroke, an ulcer, and memory loss. (TR at 167)

Roeschlaub was examined by Lawrence Johnson, M.D., an orthopedic surgeon, in January 2006 for her complaints of back and right leg pain. (TR at 536) Dr. Johnson remarked that Roeschlaub ambulated with a mild limp, and she had moderately reduced back range of motion. He diagnosed probable mild right sciatica. A magnetic resonance imaging ("MRI") scan of the lumbosacral spine on February 17, 2006, showed disc degeneration at L3-L4, L4-L5, and L5-S1, as well as a large disc herniation at L4-L5 eccentric toward the left side. (TR at 538, 591) In 2006, Roeschlaub received multiple epidural steroid injections, as well as a lumbar facet injection. She again received lumbar epidural injections in 2009 and 2010. (TR at 467, 585, 587) On October 18, 2010, Dr. Johnson stated that his impression of Roeschlaub's back pain was that she had "chronic back pain," and his suggested plan included "weight loss, [a] walking program, back exercises and use of anti-inflammatory medication." (TR at 678) Dr. Johnson specifically stated: "She is not a surgical candidate." (TR at 678)

Physiatrist Atual Bhat, M.D. examined Roeschlaub in July 2010, administered steroid injections at the right L4-L5 and L5-S1 joints, and prescribed physical therapy which yielded some improvements in the symptoms. (TR 558-560, 562-563) At a follow-up examination in October 2010, Dr. Bhat stated that while the injections did not significantly change Roeschlaub's pain, surgery was not warranted. (TR at 57)

On September 23, 2007, Roeschlaub was admitted to Saints Medical Center and assessed as having suffered an "acute left hemispheric stroke with an NIH Scale around 15." (TR at 546-547) On December 28, 2009, treating physician Arya Farahmand stated that Roeschlaub had "excellent recovery" from her stroke. (TR at 553)

Roeschlaub reported right shoulder pain and difficulty raising her arm in a February 19, 2009 examination by Dr. Johnson. (TR at 541) Dr. Johnson diagnosed right shoulder pain associated with subacromal bursitis. (TR at 541)

On October 28, 2010, Dr. Johnson completed a medical source statement regarding Roeschlaub's ability to engage in physical, work-related activities. (TR at 674-677) Dr. Johnson opined that Roeschlaub could occasionally lift and carry ten pounds and could frequently lift and carry less than ten pounds. (TR at 674) He further opined that Roeschlaub could stand and/or walk less than

two hours in an eight-hour workday[2], and she would need to alternate between sitting and standing. (TR at 674-675) Dr. Johnson continued that Roeschlaub's ability to push and pull with upper extremities was restricted to no more than fifteen pounds, and that she could occasionally climb, balance, kneel, crouch, and stoop. (TR at 675) Dr. Johnson also concluded that her ability to maintain attention and concentration on work tasks throughout an eight-hour workday was not significantly compromised. (TR at 676) Overall and in his own words, Dr. Johnson concluded that Roeschlaub "can only do sedentary, desk type work with limited lifting, pushing, and carrying. She must be allowed to alternate between sitting and standing at her job." (TR at 677)

### IV. The Standard Of Review

Title 42 U.S.C. §405(g) provides, in relevant part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.... The court shall have power to enter, upon

---

[2] Although the form asked the medical source to "provide an explanation of the precise limitation" if Roeschlaub could stand and/or walk less than two hours in an eight-hour workday, Dr. Johnson did not provide any explanation. (TR at 674)

> the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

The Court's role in reviewing a decision of the Commissioner under this statute is circumscribed:

> We must uphold a denial of social security disability benefits unless 'the Secretary has committed a legal or factual error in evaluating a particular claim.' *Sullivan v. Hudson*, 490 U.S. 877, 885, 109 S.Ct. 2248, 2254, 104 L.Ed.2d 941 (1989). The Secretary's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. §405(g); *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

*Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15, 16 (1 Cir., 1996); *see also Reyes Roble v. Finch*, 409 F.2d 84, 86 (1 Cir., 1969)("And as to the scope of court review, 'substantial evidence' is a stringent limitation.").

The Supreme Court has defined "substantial evidence" to mean "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); *Irlanda Ortiz v. Secretary of*

*Health & Human Services*, 955 F.2d 765, 769 (1 Cir., 1991). It has been explained that:

> In reviewing the record for substantial evidence, we are to keep in mind that 'issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Secretary.' The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts. We must uphold the Secretary's findings in this case if a reasonable mind, reviewing the record as a whole, could accept it as adequate to support his conclusion.

*Lizotte v. Secretary of Health and Human Services*, 654 F.2d 127, 128 (1 Cir., 1981)(*quoting Rodriguez v. Secretary of Health and Human Services*, 647 F.2d 218, 222 (1 Cir., 1981)); *Geoffroy v. Secretary of Health and Human Services*, 663 F.2d 315, 319 (1 Cir., 1981)("In any event, whatever label the parties or the court ascribe to the procedure used to review the Secretary's decision, statute and long established case law make clear that the court's function is a narrow one limited to determining whether there is substantial evidence to support the Secretary's findings and whether the decision conformed to statutory requirements." (citations omitted)).

In other words, if supported by substantial evidence, the Commissioner's decision must be upheld even if the evidence could also arguably admit to a different interpretation and result. *Ward v. Commissioner of Social Security,* 211 F.3d 652, 655 (1 Cir., 2000); *see also Nguyen v. Chater,* 172 F.3d 31, 35 (1 Cir., 1999) (per curiam). Lastly,

> Even in the presence of substantial evidence, however, the Court may review conclusions of law, *Slessinger v. Sec'y of Health & Human Servs.*, 835 F.2d 937, 939 (1st Cir.1987) (per curiam) (*citing Thompson v. Harris*, 504 F.Supp. 653, 654 [D. Mass.1980]), and invalidate findings of fact that are 'derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts,' *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999) (per curiam).

*Musto v. Halter*, 135 F. Supp.2d 220, 225 (D. Mass., 2001).

## V. Discussion

The plaintiff challenges the Commissioner's decision on several grounds: the ALJ's RFC[3] was not correct; the ALJ had a duty to recontact Dr. Johnson and failed to do so; the ALJ erred in accepting the vocational expert's testimony without addressing and resolving the conflicts with the DOT[4]; and the ALJ erred in her credibility analysis.

### A. The ALJ's RFC

Roeschlaub argues that "the ALJ simply ignored Dr. Johnson's opinion that Ms. Roeschlaub could not stand and/or walk even two hours per day." (#16 at 5) The plaintiff contends that the ALJ erred in not exploring this

---

[3] The term "RFC" refers to Roeschlaub's residual functioning capacity as determined by the ALJ.

[4] The term "DOT" refers to the Dictionary of Occupational Titles.

9

opinion at the administrative hearing, and that there is no further information in the record regarding this conclusion. (#16 at 5) Having reviewed the record in its entirety, the Court finds that the ALJ erred in failing to give any indication or explanation as to why she did not credit this evidence from the treating physician. *See Burnett v. Comm'r of Social Sec'y Admin.*, 220 F.3d 112, 121 (3 Cir., 2000) ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" (internal citations omitted)).

The ALJ concluded that Roeschlaub's RFC included the ability to perform sedentary work that did not require pushing or pulling more than fifteen pounds with upper extremities and would permit alternating between sitting and standing. (TR at 10) The ALJ continued by stating that Roeschlaub was limited to only simple, one- and two-step task work. (TR at 10) The ALJ did not include in her RFC any specific additional limitation about the total time in an eight-hour workday that Roeschlaub could spend standing and/or walking.

Having expressly stated she afforded great weight to Dr. Johnson's

opinion in determining the RFC, it seems the ALJ nonetheless implicitly rejected the doctor's stand and/or walk limitation. It is clear from the fact that the ALJ included a fifteen-pound push/pull limitation in the RFC that she did not rely solely upon Dr. Johnson's handwritten "overall" conclusion. (TR at 10, 677) Rather, she necessarily considered Dr. Johnson's full medical source statement, i.e., paragraph 4 under Exertional Limitations, when determining Roeschlaub's RFC. However, concluding that Roeschlaub can perform sedentary work is not necessarily in accord with Dr. Johnson's medical opinion that she could stand and/or walk less than two hours per day, where sedentary work, as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), *may* require standing and/or walking for two or more hours per day.[5] To the extent that the ALJ stated she was affording

---

[5]
    20 C.F.R. §§ 404.1567(a) and 416.967(a) define sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

*See also* SSR 83-10.

SSR 83-10 defines the term "occasionally" as used in the definition of sedentary work in the regulations as follows:

> 'Occasionally' means occurring from very little up to one-third of the time. Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday. . . . Work processes in specific jobs will dictate how often and how long a person will

11

great deference to the opinion of Dr. Johnson, but then failed to acknowledge this inconsistency between her RFC and his medical opinion, the ALJ implicitly rejected this probative medical evidence. *See Cotter v. Harris*, 642 F.2d 700, 707 (3 Cir., 1981) ("The ALJ's failure to explain his implicit rejection of this evidence or even to acknowledge its presence was an error" where "there was expert medical testimony that was probative support of [plaintiff's] claim which conflicted with the medical testimony accepted by the ALJ.") (footnote omitted). The ALJ's failure to explain this implicit rejection of probative medical evidence, or even to acknowledge its presence, was an error.

The plaintiff points to SSR 96-9p to support her argument that the ALJ failed to provide substantial evidence in determining Roeschlaub's RFC. SSR 96-9p states in pertinent part:

> Standing and walking: The full range of sedentary work requires that an individual be able to stand and walk for a total of approximately 2 hours during an 8-hour workday. If an individual can stand and walk for a total of slightly less than 2 hours per 8-hour workday, this, by itself, would not cause the occupational base to be significantly eroded. Conversely, a limitation to standing and walking for a total of only a few minutes during the workday would erode the unskilled sedentary occupational base significantly. For

---

need to be on his or her feet to obtain or return small articles.

> individuals able to stand and walk in between slightly less than 2 hours and only a few minutes, it may be appropriate to consult a vocational resource.

SSR 96-9p.[6]

Assuming that the ALJ accepted Dr. Johnson's opinion in toto, it is impossible to determine whether the ALJ's finding that Roeschlaub's maximum capacity level existed at the sedentary level, within the range of standing and/or walking from very little up to one-third of the time[7], is consistent with Dr. Johnson's opinion that Roeschlaub was limited to less than two hours of standing and/or walking. (TR at 674) Since Dr. Johnson offered no explanation for his less than two-hour stand/sit limitation, it is unknown exactly how long he believes that Roeschlaub can stand/sit during an eight-hour day and why. It is also unknown whether the plaintiff can perform sedentary work if her ability to stand and/or walk is limited to less than two hours a day when coupled with the other restrictions in her RFC, or if jobs exist in the economy that she is able to perform

---

[6] The defendant is correct in arguing that SSR 96-9p mandates two hours of standing and walking for a *full range* of sedentary work, and it does not necessarily foreclose Roeschlaub from doing any type of sedentary work. (#18 at 7) That argument, however, does not address the fundamental problem in this case.

[7] Of course, accepting *arguendo* that the plaintiff can sit/stand for less than two hours a day, that would mean that she could sit/stand for less than one quarter of an eight-hour workday. Accordingly, by definition, Roeschlaub would not be able to perform a full range of sedentary work.

when the additional sit/stand limitation is factored into the equation. The ALJ did not consider Dr. Johnson's posited stand and/or walk limitation and so did not include it in her hypothetical questions to the vocational expert.

In short, having stated that she "concurs with Dr. Johnson's opinion and gives it great weight, as it is consistent with the record as a whole," to the extent that the ALJ rejected the doctor's sit/stand limitation, she erred in failing to explain that rejection. Alternatively, to the extent that the ALJ accepted Dr. Johnson's opinion in its totality, her failure to investigate further in order to obtain an "explanation of the precise limitation" (TR at 674) about which the doctor opined relative to the sit/stand limitation was an error.[8] Further, the ALJ erred in failing to incorporate the less than two-hour sit/stand limitation is her RFC and to pose hypothetical questions to the vocational expert incorporating that limitation.

Although the case must be remanded for the reasons discussed, the Court

---

[8] The ALJ is obligated to recontact a physician if additional evidence was needed to reach a determination on whether the plaintiff was disabled. 20 C.F.R. §§ 404.1512(e), 416.912(e). *See also* SSR 96-5p ("Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion.").

shall address one additional issue raised by Roeschlaub.[9]

B. <u>The ALJ's Credibility Analysis</u>

The plaintiff also challenges the ALJ's analysis of her credibility. (#16 at 17-20) According to Roeschlaub, the ALJ improperly "denigrated the severity" of her subjective complaints of pain because she takes over-the-counter pain relievers only; her doctors have not recommended surgery; and her daily activities are inconsistent with her complaints of pain. (#16 at 17-18) The applicable standard bears repeating: "It is the responsibility of the Secretary to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the Secretary, not the courts." *Irlanda Ortiz*, 955 F.2d at 769 (citations omitted). Stated more succinctly, "the ultimate decision of credibility rests with the ALJ." *Garvin v. Astrue*, 2011 WL 3205350, at *13 (M.D. Tenn., July 26, 2011), *Report and Recommendation adopted by* 2011 WL 3875748 (M.D. Tenn., Sept. 1, 2011).

In the instant case, the ALJ reviewed the entire record in detail and discussed the plaintiff's credibility extensively, covering nearly two pages of single-spaced text. The ALJ did not fully credit Roeschlaub's testimony, finding

---

[9] The Court shall not address the issues with respect to the vocational expert's testimony as that testimony may change on remand.

"that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (TR at 11)

It is clear that an ALJ cannot ignore a plaintiff's statements detailing the symptoms, persistence, or intensity of his/her pain simply because current objective medical evidence does not fully corroborate the plaintiff's statements. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c) (2). Besides reviewing medical records to address the credibility of a plaintiff's symptoms of pain, an ALJ must review the entire case record in light of the seven factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), to wit:

> (i) [The plaintiff's] daily activities; (ii) The location, duration, frequency, and intensity of [the plaintiff's] pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness and side effects of any medication [the plaintiff] take[s] or ha[s] taken to alleviate [] pain or other symptoms; (v) Treatment, other than medication, [the plaintiff] receive[d] or ha[s] received for relief of...pain or other symptoms; (vi) Any measures [plaintiff] use[s] or ha[s] used to relieve... pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning [plaintiff's] functional limitations

16

and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

In making her credibility determination, the ALJ not only considered the objective medical evidence, as discussed *supra*, but also the medical records from treating and evaluating physicians and the plaintiff's activities of daily living. With regard to Roeschlaub's back and shoulder conditions, the ALJ found: "[A]lthough the claimant has received treatment for the impairments discussed above, that treatment has been essentially routine and conservative in nature." (TR at 12) The ALJ further concluded that taking aspirin for back and shoulder pain is a "conservative medication regimen" and "not indicative of a disabling impairment." (TR at 12) Similarly, the ALJ determined that where Roeschlaub's treating physicians have concluded she is not a candidate for surgical intervention, they have taken a "conservative approach . . . not indicative of an individual suffering from a debilitating level of pain." (TR at 12, 678) The ALJ also found that the gap in treatment for back pain in 2007 and 2008 was "not entirely consistent with [Roeschlaub]'s assertion that her back pain has been present and severe since 2005." (TR at 12) It is proper to consider gaps in treatment as "evidence" that a claimant's asserted symptoms are not as severe as claimed. *Irlanda Ortiz*, 955 F.2d at 769 ("The Secretary

then drew the inference that claimant would have secured more treatment had his pain had been as intense as alleged.").

The ALJ also considered the plaintiff's ability to perform activities of daily living, and Roeschlaub herself testified to her daily activities as including performing light household tasks, driving her daughter to school, and using the computer. (TR at 45-47) The plaintiff relies on *Rohrberg v. Apfel*, 26 F. Supp.2d 303, 311 (D. Mass., 1998) and *Smith v. Califano*, 637 F.2d 968, 971 (3 Cir., 1981), to argue these daily and routine activities indicate evidence of limited abilities rather than sustained regular activity. However, those cases stand for the propositions that "'sporadic and transitory'" activities may serve as "evidence of the claimant's limited abilities" and that "two sporadic occurrences . . . might indicate merely that the claimant was partially functional on two days." *Rohrberg*, 26 F. Supp.2d at 311 (internal citation omitted); *Smith*, 637 F.2d at 971. In the instant case, Roeschlaub testified to performing the aforementioned activities on a *daily* and *routine* basis, not merely sporadically, transitorily, or infrequently, as did the plaintiffs in both *Rohrberg* and *Smith*. (TR at 45-47) Here, the ALJ accepted the plaintiff's claim that she had impairments', she questioned only the severity and duration of the symptoms as described by Roeschlaub. The plaintiff's daily activities support the ALJ's judgment. To

18

summarize, the objective medical evidence, the medical reports of the plaintiff's treating and examining sources, and the plaintiff's activities of daily living demonstrate that her physical impairments cause her a certain amount of pain, but the same record evidence provides substantial evidence to support the ALJ's conclusion that Roeschlaub's subjective complaints that her pain is disabling is not entirely credible.

## VI. Recommendation

For all the reasons stated, it is RECOMMENDED that Plaintiff's Motion to Reverse the Decision of the Commissioner (#16) be ALLOWED to the extent that final judgment be entered REMANDING this case to the Commissioner for further proceedings in accordance with this opinion. It is FURTHER RECOMMENDED that Defendant's Motion for Order Affirming the Decision of the Commissioner (#17) be DENIED.

## VII. Review by the District Judge

The parties are hereby advised that any party who objects to these recommendations must file a specific written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for

such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1 Cir., 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1 Cir., 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1 Cir., 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1 Cir., 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1 Cir., 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ *Robert B. Collings*
ROBERT B. COLLINGS
United States Magistrate Judge

December 5, 2011.